UNITED STATES of America, Appellee,

v.

Juan Guadalupe GALVAN, Appellant.

No. 73-3195.

United States Court of Appeals, Ninth Circuit.

July 15, 1974.

Matthew N. Lees, San Diego, Cal., for appellant.

James Meyers, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS and GOODWIN, Circuit Judges, and CARR,* District Judge.

OPINION

ALFRED T. GOODWIN, Circuit Judge:

This judgment is vacated and the case is remanded to the United States District Court for the Southern District of California for reconsideration in view of our intervening decision in United States v. Brignoni-Ponce, 499 F.2d 1109 (9th Cir. 1974) (en banc).

Vacated and remanded.

CARR, District Judge, (dissenting):

I dissent.

It seems to me that this court continually overlooks the fact that the prohibition is not against searches but against "unreasonable searches."

In the instant case I cannot conclude from the facts surrounding the apprehension of the defendant that the questioning and ultimate arrest amounted to an unreasonable search.

The transcript of evidence discloses that Agent Socci was at the checkpoint,

* The Honorable Charles H. Carr, United States District Judge for the Central District of California, sitting by designation.

saw the defendant pull up in a pickup truck, driving northbound on I–5, at approximately 9:00 p. m. He testified that the occupants were "appearing very nervous, and avoiding looking in my direction." [R.T. 7, 8]; that he directed the vehicle to the secondary position [R.T. 9]; that he noticed that two of the persons on the front side were dark, curly headed, full-set eyes, etc; that he has seen and knows from experience persons of Mexican descent [R.T. 9, 10].

Agent Banzin testified that he inquired at the secondary area " * * * what is your citizenship?" They did not respond. Then he asked them in Spanish and they said they were born in Mexico and had no immigration papers [R.T. 21].

Shortly prior to stopping the defendant's truck, a person in a passing car told Banzin that a dark-colored truck down the road pulled off to the side of the road [R.T. 22]. Banzin stated that many times this was done to get rid of aliens [R.T. 23].

The court in United States v. Brignoni-Ponce, 499 F.2d 1109 (9th Cir. 1974) (en banc), stated " * * * in United States v. Bowen, 500 F.2d 960 (9th Cir. 1974) (en banc), we also held that, although searches by border-patrol agents at fixed checkpoints violated the Fourth Amendment, * * *." In *Bowen* defendant was convicted of smuggling and transporting drugs and marijuana. The *Bowen* opinion was en banc, but it did not set out the facts surrounding the search. The opinion did announce that the ruling in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), applied to fixed checkpoint searches.

A careful reading of *Almeida-Sanchez* leads me to conclude that it is doubtful that the Supreme Court will uphold the decision of this court respecting checkpoint searches. Four of the Justices dissented in the case, and Mr. Justice Powell pointed out, at page 276, 93 S.Ct. at 2541: "Nor does this case involve the constitutional propriety of searches at permanent or temporary checkpoints removed from the border or its functional equivalent."

I am certainly not convinced that *Almeida-Sanchez, Bowen,* or *Brignoni-Ponce,* is authority for a reversal of this conviction. There appears to be a wide difference between the search of an automobile and the finding of narcotics, and the instant case in which two Mexican nationals were in plain view of agents who had considerable experience with such persons attempting to illegally enter the United States.

It seems to me that this court has extended the *Almeida-Sanchez* case beyond its holding.

To reverse this case would, in my judgment, be to completely ignore everyday practicalities and ordinary experience. I certainly am not anxious to add further obstructions to the enforcement of the criminal laws of the country.

I should think that any person proceeding on the highway in or near San Diego, at least traveling north, could be asked the question if he were a citizen of this country. Every nation in the world, insofar as I am aware, takes occasion to inquire of the citizenship of persons who look or act like foreigners. Even the hotels require a person to deposit his passport. I cannot believe that the founding fathers of this country intended to have the Fourth Amendment destroy the power of this nation to protect itself from invasion by persons illegally entering the country. The decisions of some of the courts at the present time seem to be moving in that direction.

I would affirm the judgment of conviction.